IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| James B. Skelton, ) | Case No. 3:10-cv-01958-MBS-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| R. Admiral Donald P. Quinn, ) | |
| Navy Personnel Command, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on Defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 50.] Plaintiff is proceeding pro se. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pre-trial matters in cases filed by individuals proceeding pro se and to submit findings and recommendations to the District Court.

## BACKGROUND

Plaintiff filed his Complaint on July 27, 2010, alleging Defendant is obligated to provide him with retirement benefits "dating back 20 years," from the time of his discharge from the Navy Reserves "for medical/psychol[o]gical reasons." [Doc. 1 at 3.] Plaintiff alleges he "had a total of 12 years into the retirement system having served 4 years on active duty and 8 years in the Reserves." [*Id.*] Plaintiff further alleges:

> Under civil[]ian law anybody who leaves a company retirement plan can withdraw it if they have a vested 50% in the plan. My vested in[ ]the Navy retirement plant is 60% and should be granted to me with backpay for 20 years that was denied me

>   when I was discharged from the Reserves.[1] This comes under
>   the equal protection of the law which should apply to
>   government retirement plans in accordance with the 14th
>   Amendment of the United States Constitution.

[*Id.*]

In subsequent filings in support of his Complaint, Plaintiff alleges he served in the Navy onboard the USS Little Rock from October 1973 until October 1975. [Doc. 24 at 1; Doc. 1-3 at 3.] In October 1975, Plaintiff was transferred to the USS Conyngham. [Doc. 24 at 1; *see* Doc. 1-3 at 3.] He was discharged from the Navy on February 25, 1977. [Doc. 24 at 1; *see* Doc. 1-3 at 3.] In 1982, Plaintiff joined the Navy Reserves. [Doc. 24 at 1.] In or around 1989, Plaintiff was involuntarily discharged from the Reserves for missing too may drill weekends. [*Id.*] Approximately three to six months later, he was allowed to re-enlist, and he served on the Charleston Navy base until his mental breakdown in 1989. [*Id.*] At that time, he was also a civilian employee of the Charleston Naval Shipyard. [*Id.*] Plaintiff alleges the Physical Examination Board ("PEB") ruled Plaintiff was disabled and not fit to return to duty in the Reserves. [Doc. 20-1 at 2.] As a result of his discharge, Plaintiff claims he was forced to take a job with the labor pool and file bankruptcy.[2] [*Id.*]

Plaintiff contends he is entitled to back pay and retirement benefits because,

>   [u]nder the IRS's rules for retirement plans, [he is] eligible for
>   a military disability/retirement because [he] became disable[d],
>   [he has] a hardship, and [he] was terminated from employment

---

[1] The Board for Correction of Naval Records ("BCNR") upheld Plaintiff's discharge following a 1989 determination by the Physical Evaluation Board that Plaintiff was not physically qualified for service. [Doc. 1-3 at 2.] It appears that, in letters dated March 13, 2009 and April 20, 2010, Defendant indicated to Plaintiff that Plaintiff did not qualify for retirement benefits because he was discharged before serving the requisite number of years. [*Id.*]

[2] According to Plaintiff, he sued the Navy for terminating him in an allegedly unlawful manner, and in September 2008, he settled with the Navy for $30,000. [Doc. 20-1 at 4, 11.]

2

> in the Navy Reserves. These are undisputable facts of the
> case for which [he] seek[s] compensation.

[Doc. 53.] According to Plaintiff, he had twelve years, or 60%, vested into military retirement at the time he was discharged, and therefore, he should be able to get these benefits through court action "[u]nder the IRS rules and in accordance with the 14th Amendment" because "the equal protection clause applies to [the] military retirement system just as it applies to any civilian retirement system." [Doc. 12.] Plaintiff alleges it is discrimination "[t]o try to separate the two retirement [systems] under different rules." [*Id.*] Accordingly, Plaintiff asks the Court to "direct the Navy Personnel Command to start making retirement payments to [him] according to the equal opportunity as provided by law that is used in civil[]ian retirement plans." [Doc. 1 at 5.] In addition, Plaintiff seeks a "military retirement ID along with base priv[i]le[]ges." [*Id.*] The Complaint does not challenge the propriety of Plaintiff's discharge but challenges Defendant's denial of retirement benefits.[3] [*See* Doc. 12.]

Defendant filed a motion to dismiss on May 23, 2011 [Doc. 50], alleging the Complaint should be dismissed under Rules 12(b)(1) and (6) for the following reasons: (a)

---

[3] Plaintiff sought retirement benefits directly from the Navy, which were denied via letter dated March 22, 2010. [Doc. 20-1 at 15–16.] The letter states, in pertinent part, that:

> A review of available records indicates you were transferred to the Individual Ready Reserves (IRR) on November 15, 1987 due to inability to maintain satisfactory drill attendance. On March 1, 1988, you affiliated with Naval Reserve Readiness Center (NRRC) Charleston, SC. Regrettably, a medical condition occurred while you were a civilian employee at the Charleston Naval Shipyard. Due to the incident, NRRC Charleston revoked your security clearance on March 11, 1989. It was further determined that you were ineligible for reenlistment and thus you were discharged from the Navy Reserve on January 17, 1990.

[*Id.* at 16.]

Plaintiff is seeking money damages and, therefore, the Court of Claims is the only court with jurisdiction to hear the Complaint; (b) Plaintiff is barred from filing suit under the statute of limitations mandated by the Administrative Procedures Act ("APA"); (c) the Fourteenth Amendment is inapplicable to Plaintiff's challenge of the military retirement system because the Fourteenth Amendment applies only to the States and military retirement is governed exclusively by federal law; and (d) to the extent he invokes equal protection under the Fifth Amendment, Plaintiff's claim fails because Plaintiff failed to meet the statutory requirements to receive military retirement pay and there is a rational basis for the military's retirement scheme [Doc. 50-1]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised by Order filed May 23, 2011 that he had thirty-four days to file any material in opposition to the motion to dismiss. [Doc. 51.] On June 9, 2011, Plaintiff filed a response in opposition to Defendant's motion to dismiss. [Doc. 53.] Accordingly, Defendant's motion to dismiss is ripe for review.

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520; *Hughes v. Rowe*, 449 U.S. 5, 10 n.7 (1980) (per curiam). Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Haines.* at 520–21. The mandated liberal

construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 418–19 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Motion to Dismiss Standards**

### *Rule 12(b)(1)*

A motion to dismiss under Rule 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded.  Fed. R. Civ. P. 12(b)(1).  The court may dismiss a case for lack of subject matter jurisdiction on any of the following bases: "'(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'"  *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).  Generally, challenges to jurisdiction under Rule 12(b)(1) may be raised in two ways: "facial attacks" and "factual attacks."  *See Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986), *overruled on other grounds by Sheridan v. United States*, 487 U.S. 392 (1988).   A facial attack questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction; the  court analyzes a facial attack as it would a motion to dismiss under Rule 12(b)(6) such that "[t]he allegations in the complaint are taken as true, and materials outside the pleadings are not considered."  *Id.*

A "factual attack" challenges the truthfulness of the jurisdictional allegations in the complaint, *id.*, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment," *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213,1219 (4th Cir. 1982); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citing *Trentacosta*, 813 F.2d at 1559); *see also Dira v. Deutch*, 149 F.3d 1167, 1998 WL 276236, at *1 (4th Cir. 1998) (unpublished table decision) ("When such 'factual' challenges are asserted, a trial court may go beyond the allegations of the complaint, weigh the evidence, and satisfy itself as to its jurisdiction to hear the case."). A dismissal should only be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg*, 945 F.2d at 768 (citing *Trentacosta*, 813 F.2d at 1558).

### *Rule 12(b)(6)*

A motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle her to relief. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Further, on a motion pursuant to Rule 12(b)(6), if matters outside the

pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)); *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (noting that court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

## **DISCUSSION**

**Jurisdiction Pursuant to the Tucker Act**

Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's claim because, under the Tucker Act, the United States Court of Federal Claims has exclusive jurisdiction over Plaintiff's claim. [Doc. 50-1 at 5–6]. Specifically, Defendant argues Plaintiff's claim is within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act because the claim (1) is against the federal government and (2) seeks money damages. [*Id.*] Defendant also contends, "To the extent that Plaintiff requests equitable relief, the equitable relief here is clearly incidental to, and contingent on, his claim for backpay." [*Id.* at 6.] Defendant reasons that "the Court of Federal Claims is the only court that possesses the power to 'provide an entire remedy' by addressing both the back pay issue and any incidental equitable relief." [*Id.*] The Court disagrees.

The Tucker Act provides that the United States Court of Federal Claims has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."[4]   28 U.S.C. § 1491(a)(1).  A plaintiff must identify an

---

[4] The Tucker Act also authorizes the Court of Federal Claims to issue limited equitable relief:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

28 U.S.C. § 1491(a)(2).

independent basis—a contract, federal statute, regulation, or the Constitution—that entitles the plaintiff to monetary payment from the federal government because the Tucker Act does not confer unlimited jurisdiction on the Court of Federal Claims; the court's jurisdiction exists only if the substantive right exists. *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) ("The claim must be one for money damages against the United States and the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." (internal citations omitted)); *United States v. Testan*, 424 U.S. 392, 398 (1976) ("The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists."); *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) ("In order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages. In the parlance of Tucker Act cases, that source must be money-mandating." (internal citations and quotations omitted)).

The Tucker Act does not extend to equal protection claims under the Fifth Amendment because equal protection claims cannot be fairly interpreted as mandating compensation.[5]  *Stephenson v. United States*, 58 Fed. Cl. 186, 192 (2003) (citation

---

[5] For example, in *Anstine v. United States*, a retired member of the Air Force sought monetary damages for loss of military pay and benefits in the Court of Claims stemming from his demotion for failure to satisfy the Air Force's weight requirements. No. 10-138C, 2010 WL 5256459, at *1 (Fed. Cl. Dec. 16, 2010). He alleged that the Air Force's improper refusal to restore his rank lead him to involuntarily retire at a lower grade, affecting his retirement pay and benefits. *Id.* at *4. The plaintiff alleged the Air Force's conduct violated the equal protection principles of the Fifth Amendment. *Id.* at *16. The Court of Federal Claims held that it lacked jurisdiction under the Tucker Act because "the Equal Protection Clause is not a

9

omitted); *Bounds v. United States*, 1 Cl. Ct. 215, 216 (citing *Muehlen v. United States*, 209 Ct. Cl. 690 (1976)), *aff'd*, 723 F.2d 68 (Fed. Cir. 1983); *Carruth v. United States*, 627 F.2d 1068, 1081 (Ct. Cl. 1980) (citations omitted). While Plaintiff's claims are couched in terms of the Fourteenth Amendment,[6] Defendant argues [Doc. 50-1 at 7], and the Court agrees, that Plaintiff's claims are more appropriately viewed as a challenge under the Fifth Amendment because the Fourteenth Amendment does not apply to the federal government. Although the Fifth Amendment does not explicitly guarantee equal protection, the Fifth Amendment's Due Process Clause nevertheless imposes the equal protection doctrine on the federal government. *McMahan v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers*, 858 F. Supp. 529, 549 (D.S.C. 1994). And while the purpose of the equal protection doctrine is to prevent the government from making improper classifications, *id.*, "[t]he Fifth Amendment does not mandate compensation by the government . . . for alleged violations of due process and equal protection," *Sonnenfeld v. United States*, 154 F. App'x 212, 215 (Fed. Cir. 2005); *cf. Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005) (finding there was no dispute that the plaintiff brought suit pursuant to the Tucker Act because the plaintiff "claim[ed] entitlement to military disability pay under 10 U.S.C. § 1201, a money-mandating statute"). Accordingly, the Court of Federal Claims does not have jurisdiction over Plaintiff's claim, and this Court is not statutorily divested of subject matter jurisdiction over this action by the Tucker Act.

---

money-mandating provision of the Constitution." *Id.*

[6] The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The function of the Fourteenth Amendment's Equal Protection Clause is to measure the validity of classifications created by state law. *Parham v. Hughes*, 441 U.S. 347, 351–52 (1979).

**Statute of Limitations**

Defendant argues Plaintiff's claim should be dismissed under Rule 12(b)(6) because Plaintiff "is barred from filing under the APA in this jurisdiction due to the statute of limitations." [Doc. 50-1 at 6.] Defendant argues (1) the final agency action was Plaintiff's discharge in 1989 and (2) judicial review of the discharge is time barred by the six-year statute of limitations set forth in 28 U.S.C. § 2401. [*Id.* at 6–7.] As explained below, it is not clear when Plaintiff's claim began to accrue, and therefore, the Court cannot determine at this procedural posture if and when the statute of limitations ran on Plaintiff's claim.

Section 2401(a) provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."[7]  28 U.S.C. § 2401(a). "Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed." *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987). Accordingly, "the words 'every civil action' mean what they say," *id.*, and any civil action against the United States is barred if commenced more than six years after the right of action first accrues.[8]

---

[7] The statute creates an exception for claims subject to the Contract Disputes Act of 1978. 28 U.S.C. § 2401(a).

[8] An action against a federal official "'challenging official conduct are intrinsically against the United States and are now treated as such for all practical purposes,'" including the application of § 2401(a). *Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985) (quoting H.R. Rep. No. 1656, at 11 (1976)).

11

Here, Plaintiff claims the military retirement system violates equal protection of the law because it is not operated like a civilian retirement system.[9] "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action," i.e., a cause of action accrues when the plaintiff should have known he had a cause of action. *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995). Accordingly, an equal protection claim accrues "as soon as the alleged wrongful actions occurred." *Castapheny v. W. Va. State Police*, No. 2:10-735, 2011 WL 9395, at *5 (S.D.W. Va. Jan. 3, 2011) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Therefore, Plaintiff's cause of action began to accrue when he was denied military retirement benefits.

In this case, it is unclear when the alleged wrongful action—denial of retirement benefits—occurred because it is unclear when Plaintiff should have known he had a cause of action for the denial of retirement benefits. *See Nasim*, 64 F.3d at 955. In other words, it is unclear when Plaintiff possessed sufficient facts to know he would not receive retirement benefits from the military. Several sections of the United States Code outline the provisions of military retirement. *See, e.g.*, 10 U.S.C. §§ 1201–1222 (retirement or

---

[9] To the extent Plaintiff asserts a claim of wrongful discharge, his claim is time barred. "In order to bring a military discharge case . . . , a plaintiff . . . must allege that, because of the unlawful discharge, the plaintiff is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful discharge," and "the plaintiff's cause of action for back pay accrues at the time of the plaintiff's discharge." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003). As the Court of Claims held in *Zoesch v. United States*, military pay claims are not continuous and the claim arises on the date of the incident of separation from the service. 650 F.2d 291 (Ct. Cl. 1980). Consequently, the applicable statute of limitations bars claims of wrongful discharge brought more than six years after the claimant's discharge date.

Here, Plaintiff was discharged from the Navy Reserve on January 17, 1990. [Doc. 20-1 at 16.] Therefore, the statute of limitations related to Plaintiff's claim for wrongful discharge began to accrue, at a minimum, when he was discharged from the Navy Reserves in January 1990, over twenty years before the filing of this action. Accordingly, a claim for wrongful discharge expired over fourteen years ago and is barred by the statute of limitations. Moreover, Plaintiff alleges he has already settled any wrongful discharge claims with the Navy. *See supra* note 2.

separation for physical disability), 6321–6336 (voluntary retirement), 12731–12741 (retired pay for non-regular service in the Reserves). Plaintiff asks the Court to award him disability retirement benefits. [Doc. 53 at 1; *see also* Doc. 12 (stating that Plaintiff is seeking "the retirement benefits due [him] from the Navy when they discharged [him] for medical reasons"); Doc. 17 at 1 ("The same rules for a civilian retirement plan should be applied to me when I was discharged from the Navy Reserves for medical/psychological reasons.").] However, Defendant fails to address Plaintiff's claim as one for disability retirement [*see* Doc. 50-1 at 5 (discussing 10 U.S.C. § 6330, which pertains to voluntary retirement)] and provides little evidence to support Defendant's argument that Plaintiff's claim began to accrue at the time of Plaintiff's discharge [*id.* at 6–7].

The Court notes Plaintiff's discharge was based on the PEB's determination "that [Plaintiff was] not physically qualified for retention in the Navy" [Doc. 1-3 at 2], and the PEB considers only the cases of those service members who suffer from a condition that constitutes a physical disability, *see Peoples*, 87 Fed. Cl. at 571. Consequently, it appears that 10 U.S.C. § 1201, authorizing retirement pay under certain conditions when the service member's retirement is based on physical disability, may apply to Plaintiff, and generally, a claim for military disability retirement pay accrues on the date a military board authorized to determine entitlement either finally denies the claim or refuses to hear the claim. *Chambers*, 417 F.3d at 1224.

However, Plaintiff has provided no evidence that he presented any request for disability retirement to an authorized board of the Navy, and he has provided no evidence of any act or refusal to act by any such authorized board. Plaintiff merely provided evidence of his requests made in 2009 and 2010 to the Commanding Officer, Navy

13

Personnel Command and to the Secretary of Defense seeking retirement benefits. [*See* Doc. 1-3 at 2; Doc. 20-1 at 15–16.] Moreover, Defendant has not addressed in detail what type of retirement benefits Plaintiff would have been entitled to if he had met all requirements to receive the benefits,[10] nor has Defendant addressed when Plaintiff should have been aware that he was not entitled to any retirement benefits. With respect to the statute of limitations issue, the Court is aware of only the following information. On or about March 11, 1989, the Naval Reserve Readiness Center in Charleston, South Carolina, revoked Plaintiff's security clearance. [Doc. 1-3 at 4; Doc. 20-1 at 16.] Sometime after the revocation of his security clearance, Plaintiff was fired as a civilian employee of the Charleston Naval Shipyard. [Doc. 24 at 1.] On July 19, 1989, the PEB found Plaintiff was "disabled and not fit to return to duty."[11] [Doc. 20-1 at 2; Doc. 1-3 at 2.] A letter from

---

[10] In his memorandum in support of his motion to dismiss, Defendant contends that "[t]he statute that Plaintiff asserts violates his right to Equal Protection is 10 U.S.C. § 6330" [Doc. 50-1 at 5], which describes the requirements for voluntary retirement from the Navy and the Marine Corps, 10 U.S.C. § 6330. However, in a letter from the deputy legal counsel for the Navy Personnel Command, Plaintiff's claim was characterized as one for Reserve retirement benefits, which is a different type of military retirement benefit outlined in a different section of the United States Code. [Doc. 1-3 at 2.] Defendant does not address the significance of the PEB's determination that Plaintiff was not physically qualified for retention.

[11] The Court of Federal Claims has described the process as the following:

> Prior to separation from the Navy, a member must undergo a physical examination. The separation physical examination may result in the convening of an MEB. . . .
> An MEB is "[a] body of physicians . . . convened in accordance with [the Manual of the Medical Department] to identify members whose physical . . . qualification to continue on full duty is in doubt or whose physical . . . limitations preclude their return to full duty within a reasonable period of time."
>
> . . .
>
> The PEB accepts a case referred by an MEB when it has received "all medical and nonmedical information necessary to evaluate the case appropriately . . . ."
>
> . . .

14

the Department of the Navy dated March 22, 2010 indicates Plaintiff was discharged from the Navy Reserve on January 17, 1990. [Doc. 20-1 at 16.] Another letter from the Department of the Navy indicates that on an unspecified date, the Board of the Correction of Naval Records ("BCNR") upheld Plaintiff's discharge from the Navy Reserves based on the PEB's determination that Plaintiff was not physically qualified for retention [Doc. 1-3 at 2], but Defendant states Plaintiff did not seek review of his discharge by the BCNR [Doc. 50-1 at 6 (citing 10 U.S.C. § 1552)].

Because it is unclear which statutes govern the retirement benefits Plaintiff seeks, the Court cannot determine when Plaintiff would have known that he had a cause of action based on a denial of retirement benefits. Moreover, it appears the BCNR reviewed Plaintiff's discharge, but it is unclear when the BCNR conducted its review and what the BCNR's review established. Accordingly, there remains a question of fact regarding when the alleged wrongful action occurred such that Plaintiff's alleged equal protection claim began to accrue.

---

> The PEB uses only one standard in determining whether a member should be separated or retired due to physical disability: "Unfitness to perform the duties of office, grade, rank or rating because of disease or injury incurred or aggravated while entitled to basic pay." "A service member shall be considered unfit when the evidence establishes that the member, due to a physical disability, is unable to reasonably perform" his or her duties. Once a service member is declared to be unfit by the PEB, the PEB will either place the member on the permanent disability retired list, place the member on the temporary disability retired list, or retain the member on permanent limited disability.

*Peoples v. United States*, 87 Fed. Cl. 553, 571, 573 (2009) (internal citation omitted) (alterations in second paragraph in original); *see also Chambers*, 417 F.3d at 1225 n.2 ("A Retiring Board, now called Physical Examination Board or PEB, determines a service member's fitness for duty and entitlement to disability retirement once a Medical Examination Board or MEB finds the soldier does not meet the Army's standards for retention under its regulations.").

Further, because the statute of limitations provided in § 2401 is a jurisdictional condition attached to the government's waiver of sovereign immunity, whether the statute of limitations bars Plaintiff's claim determines whether the Court has jurisdiction to hear and decide this matter. *See Spannaus*, 824 F.2d at 55. Whether a court has jurisdiction to decide the merits of a case is a threshold matter. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). (citation omitted). "Without jurisdiction [a] court cannot proceed at all in any cause. Jurisdiction is power to declare the law . . . ." *Ex parte McCardle*, 74 U.S. 506, 514 (1868). Consequently, before considering the merits of Plaintiff's claim, the Court must determine whether Plaintiff's claim is time barred.

**Supplemental Motion**

In the interest of judicial economy, a determination of whether the Court has jurisdiction to hear and decide this matter is appropriate at this early stage of litigation. Accordingly, the Court recommends that Defendant be directed to file a supplemental motion to dismiss for lack of subject matter jurisdiction addressing the statute of limitations issue. The memorandum in support thereof should, at a minimum, address the following: (1) what type of retirement benefits Plaintiff could possibly be awarded and (2) when Plaintiff would have known he had a cause of action based on the denial of retirement benefits, i.e. when Plaintiff's alleged equal protection claim began to accrue.[12]

---

[12] As noted above, a claim for military disability retirement benefits begins to accrue from the date a military board authorized to determine entitlement either finally denies the claim or refuses to hear the claim. *Chambers*, 417 U.S. at 1224. Accordingly, in discussing when Plaintiff possessed sufficient facts as to his cause of action, Defendant should address any process that accompanies a service member's receipt of or claim for the type of retirement benefits Plaintiff could possibly be awarded, i.e., whether a board must decide the member's entitlement to benefits, etc.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion to dismiss [Doc. 50] be DENIED and that Defendant be directed to file a supplemental motion consistent with the recommendations in this Report and Recommendation.[13]

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

October 25, 2011
Greenville, South Carolina

---

[13] If the recommendations of this Report and Recommendation are adopted, the Court also recommends that Defendant be directed to file his supplemental motion within twenty days of the date of the order adopting this Report and Recommendation.